1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHELLE NEWHOUSE, et al.,

11              Plaintiffs,                      No. CIV S-12-00223 KJM-KJN

12        vs.

13   AURORA BANK FSB, et al.,

14              Defendants.                      <u>ORDER</u>

15   _____/

16              This matter is before the court on the motion of defendants Aurora Bank FSB

17   (Aurora) and Aurora Loan Services, LLC ("ALS") (collectively, "defendants") to dismiss plaintiffs'

18   first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).  For the reasons

19   set forth below, defendants' motion is granted.[1]

20   I.        BACKGROUND

21              This is a mass-joinder action involving twenty-four plaintiffs alleging that defendants,

22   involved in the origination and servicing of plaintiffs' residential mortgages, deceived them as to

23   the nature of the mortgagor-mortgagee relationship they were entering at the time of origination.

24   Plaintiffs filed their original complaint in California State Superior Court for the County of

25   _____

26        [1]  Because oral argument will not be of material assistance, the court orders these matters
     submitted on the briefs.  E.D. Cal. L.R. 230(g).

1   Sacramento.  (*See* Notice of Removal ("NOR"), ECF 1, Ex 1.)  Defendants timely removed to this

2   court in accordance with 28 U.S.C. § 1441(b) based on diversity of citizenship under 28 U.S.C.

3   § 1332.  (*Id.*)  On February 23, 2012, plaintiffs filed their first amended complaint (FAC) as a matter

4   of course in accordance with Federal Rule of Civil Procedure 15(a)(1)(B).

5               Defendant Aurora is a federal savings bank ("FSB") governed by the Home Owners

6   Loan Act of 1933 ("HOLA").[2]  Aurora was originally chartered as "Lehman Brothers Bank, FSB,"

7   in June 1999.  (Request for Judicial Notice ("RJN"), ECF 27 Ex. A.)[3]  In 2004, Aurora established

8   ALS as an operating subsidiary.  (*Id.,* Exs. B & C; FAC ¶ 37.)  ALS, without any change in its

9   relationship to Lehman Brothers Bank, FSB, converted from a corporation to a limited liability

10  company in 2005. (*Id.*, Exs. D & F.)  In April 2009, Lehman Brothers Bank, FSB, changed its name

11  to Aurora Bank FSB.  (*Id.,* Ex. G.)

12  /////

13  /////

14  /////

15  /////

16  /////

17  _____

18      [2] Plaintiff concedes that Aurora is a FSB governed by HOLA.

19      [3] Plaintiff objects to defendants Request for Judicial Notice (RJN) on the grounds that
    considering matters outside of the pleadings would convert defendants' motion to dismiss under
20  Rule 12(b)(6) into a motion for summary judgment under Federal Rule of Civil Procedure 56.
    (*See* Pls.' Objections to RJN, ECF 40; ECF 39 at 3:18-5:6.)  Plaintiffs' argument in this regard is
21  contrary to the Federal Rules of Evidence and the prevailing case law.  Specifically, the court
    may take judicial notice of the documents requested because they "can be accurately and readily
22  determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID.
    201(b)(2).  Plaintiffs' argument regarding the timing of taking judicial notice is also unavailing
23  because "[t]he court may take judicial notice at any stage of the proceeding."  FED. R. EVID.
    201(d); *see also Joseph v. Wachovia Mortg. Corp.*, 2011 WL 5827224, at *1 n.1 (N.D.Cal.,
24  2011) (taking judicial notice of the same category of documents defendants request the court
    take judicial notice of here because they were "judicially noticeable as capable of accurate and
25  ready determination by resort to sources whose accuracy cannot be questioned.")  Contrary to
    plaintiffs' contention this is not a "motion to transform [defendant's] motion [in]to one for
26  summary judgment"; it is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)
    supported by a standard request for judicial notice.

1    The gravamen of plaintiffs' amended complaint[4] is that defendants duped plaintiffs

2    into believing they were entering a traditional, arms-length, lender-borrower relationship, when in

3    fact their loans were immediately bundled, packaged and sold to investors.    Plaintiffs argue

4    defendants convinced plaintiffs to enter into risky loans defendants knew they could not afford, then

5    dragged their feet when plaintiffs attempted to modify their loans in order to obtaining higher

6    servicing fees for conducting foreclosure proceedings.

7    Plaintiffs make general allegations, not applicable to plaintiffs here, that defendants

8    engaged in the practice of "robosigning."  For example, plaintiffs allege defendants "filed in state

9    and federal courts . . . numerous affidavits or other mortgage-related documents that . . . were not

10   signed or affirmed in the presence of a notary."  (FAC ¶ 62.)  Plaintiffs allege "[d]efendants knew

11   that plaintiffs' loans would be packed up into" mortgage-backed securities; "that they would recoup

12   monies lent immediately"; and "that [p]laintiffs would be subject to a servicer instead of a lender

13   [that] was limited as to its power to assist [p]laintiffs when issues not foreseeable to [p]laintiffs

14   arose."  (*Id.* ¶ 67.)  Plaintiffs further allege, "Aurora has falsely indicated the intent to work with

15   [p]laintiffs through loan modification.  But, [p]laintiffs who have entered into the loan modification

16   process have encountered huge obstacles placed by Aurora employees."  (*Id.* ¶ 69.)

17   The complaint alleges that "[l]enders encouraged brokers to tell potential buyers

18   anything to get them into the subprime loans."  (*Id.* ¶ 75.)  Finally, plaintiffs allege "they relied on

19   the representations of the [l]enders that their loans were of good quality" when in fact "they were

20   placed in subprime loans."  (*Id.* ¶¶ 76-77.)  Based upon these allegations, plaintiffs assert claims for

21

22   [4] Plaintiffs begin their sixty-six-page complaint with a lengthy and generalized
     description of the subprime mortgage industry.  Plaintiffs assert that various pieces of federal
23   legislation created perverse incentives for banks that harmed consumers and ultimately led to the
     financial crisis of 2008.  For example, plaintiffs assert the creation of mortgage-backed securities
24   incentivized banks to pressure consumers into residential mortgages they could not afford
     because "lenders could immediately recoup monies lent by pooling residential mortgages" and
25   selling them off to investors on the secondary mortgage market.  (FAC ¶ 6.)  Plaintiffs allege,
     generally, that defendants "further encouraged [these] deceptive practices by explaining to
26   brokers and employees how to cheat [their] own underwriting program."  (*Id.* ¶ 8.)

1   (1) "Privity of Contract"[5]; (2) Rescission based on mistake; (3) Negligence (origination);

2   (4) Negligence (servicing); and (5) wrongful foreclosure.  Defendants argue all of plaintiffs' claims

3   are preempted by federal law.  Defendants also argue, in the alternative, that plaintiff cannot state

4   a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  The court

5   does not reach defendants' alternative argument, except with respect to the negligence in loan

6   servicing claim.

7   II.      STANDARD

8            Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

9   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

10  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under

11  a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

12           Although a complaint need contain only "a short and plain statement of the claim

13  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

14  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim

15  to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

16  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more

17  than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions'

18  or 'a formulaic recitation of the elements of a cause of action . . . .'"  *Id.* (quoting *Twombly*, 550 U.S.

19  at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a

20  claim is a "context-specific task that requires the reviewing court to draw on its judicial experience

21  and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual

22  allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King &*

23  *Spalding*, 467 U.S. 69, 73 (1984).

24

25           [5]  While privity of contract is an essential element in certain causes of action under
     California law, *see, e.g.*, *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1315 (2012), it is not, in-
     and-of-itself, a cognizable cause of action.  For this reason, plaintiffs' second claim for "privity
26   of contract" is dismissed with prejudice.

1    In making this context-specific evaluation, this court "must presume all factual

2    allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving

3    party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).  This rule does not apply

4    to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286

5    (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly

6    subject to judicial notice" or to material attached to or incorporated by reference into the complaint.

7    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A court's consideration of

8    documents attached to a complaint or incorporated by reference or matter of judicial notice will not

9    convert a motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d

10   903, 907-08 (9th Cir. 2003).

11   III.    ANALYSIS

12           Defendants argue each of plaintiffs' claims  comes in the purview of Title 12 Code

13   of Federal Regulations § 560.2 ("Section 560.2"), which "specifically preempts the application to

14   FSB's of any state law purporting to impose [certain] requirements" regarding lending.  (Defs.' Mot.

15   to Dismiss ("MTD"), ECF 26 at 3:11-15.)  Plaintiffs argue that their claims are not preempted

16   because "[p]laintiffs bring claims based on misrepresentation of material facts . . . ."  (Pls.' Opp'n

17   to Defs.' Mot. to Dismiss ("Opp'n"), ECF 39 at 7:19-20.)

18       A.    Federal Law:  HOLA and the OTS

19           Congress enacted HOLA in 1933, following the great crash of 1929, in order to

20   "restore public confidence by creating a nationwide system of federal savings and loan associations

21   to be centrally regulated according to nationwide best practices." *Silvas v. E*Trade Mortg. Corp.*,

22   514 F.3d 1001, 1004 (9th Cir. 2008) (citing *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S.

23   141, 160-61 (1982)).  Congress's intent in enacting HOLA was "to charter savings associations

24   under federal law" in response to "record numbers of home loans [that] were in default and a

25   staggering number of state-chartered savings associations [that] were insolvent." *Id.* (citing *Bank

26   of Am. v. City and Cnty of S.F.*, 309 F.3d 551, 559 (9th Cir. 2002)).

Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") authority to issue regulations governing thrift savings associations. *Id.*; 12 U.S.C. § 1464. With this authority, the OTS promulgated Section 560.2, a preemption regulation, with the purpose of occupying the "entire field of lending regulation for federal savings associations."" 12 C.F.R. § 560.2(a). OTS sought to "enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices." *Id.* OTS drafted the regulation to "give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation." *Id.*

Section 560.2(b) provides a list of "illustrative examples of the types of state laws that are preempted." It includes state laws purporting to impose requirements regarding:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

> . . .

> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants.

> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]

12 C.F.R. § 560.2(b)

Section 560.2(c) also provides a list of state laws that are not preempted "to the extent they only incidentally affect . . . lending operations . . . or are otherwise consistent with the purposes of paragraph (a) of this section." *Id.* § 560.2(c). These laws include those in the areas of contract, commercial, real property and tort law. *Id.*

1    OTS has developed an analytical approach, which has been adopted by the Ninth

2 Circuit, to determine whether a specific state law is preempted under Section 560.2. *Silvas*, 514 F.3d

3 at 1005.  The first inquiry is "whether the type of law in question is listed in paragraph (b)."  *Id.*;

4 OTS Opinion Letter at 11 (Mar. 10, 1999).  If the type of law in question is listed in paragraph (b),

5 "the analysis will end there; the law is preempted."  *Id.*  If the law is not covered by paragraph (b),

6 the court asks if the law affects lending.  *Id.*  If the law affects lending, the law is presumed

7 preempted.  *Id.*  "This presumption can be reversed only if the law can clearly be shown to fit within

8 the confines of paragraph (c)."  *Id.*  Paragraph (c) must be interpreted narrowly, with any doubt

9 resolved in favor of preemption.  *Id.*

10   B.   Rescission

11    Defendants argue plaintiffs' claim for rescission is "based on an alleged unilateral

12 mistake [and thus] is preempted because it seeks to compel Aurora to make specific *disclosures*."

13 (MTD at 4:8-9  (emphasis in original)).  Defendants maintain the claim is preempted under Section

14 560.2 because plaintiffs are "asking the [c]ourt to order rescission on the grounds that state law

15 mandated Aurora bank to affirmatively inform them of facts of which they allegedly were not

16 aware," which "is precisely what Section 560.2(b) preempts." (*Id.* at 4:14-17.)  Plaintiffs argue their

17 rescission claim is not preempted because "the contracts were never formed to begin with because

18 mistake of fact vitiated consent."  (Opp'n at 9:5-6.)

19    Plaintiffs' claim for rescission is preempted by Section 560.2(b).  Plaintiffs' claim

20 rests on allegations that plaintiffs "executed their Loan documents based on the mistaken belief that

21 they were dealing with a traditional lender who had an interest in conservative appraisal values and

22 who used stringent underwriting guidelines" without knowing "that ownership of the mortgage and

23 servicing of their mortgage would be separated," while "the lenders knew that Plaintiffs were

24 mistaken as to the relationship into which they were entering and knew Plaintiffs could not afford

25 the loans for which they were approved." ( FAC ¶¶ 117, 126, 135.)

26    While it is true, as plaintiffs assert, "when a plaintiff's claim relies on the general

7

1    duty not to misrepresent facts, . . . the claims are not preempted," such is not the case here.  Plaintiffs

2    themselves characterize their claim for rescission as not based on misrepresentation of material fact,

3    but rather on plaintiffs' unilateral mistake.   The heading of plaintiffs' second claim is "Rescission

4    – Mistake – Void Agreement."  (FAC at 23:12.)  The gravamen of plaintiffs' claim for rescission

5    is that they would not have executed the loan documents but for their mistaken belief that they were

6    entering into a traditional mortgage agreement.   Plaintiffs also assert "they did not know that

7    ownership of the mortgage and servicing of the mortgage would be separated."  (*Id.* ¶ 126.)  Such

8    allegations go to the heart of mortgage-related disclosures, processing, origination, servicing and

9    sales or purchases, and thus, are preempted under HOLA.  *Silvas*, 514 F.3d at 1005; 12 C.F.R. §

10   560(b)(9)-(10).

11              Other district courts agree with this conclusion.  In *Spartain v. Aurora Loan Services,*

12   *LLC*, 2009 WL 950946 (C.D.Cal. 2009), plaintiff sought rescission of a loan contract based on

13   unilateral mistake because defendant "allegedly failed to disclose the effects of a 'Yield Spread

14   Premium' on his note rate, monthly payments, and finance charges."  *Id.* at *1.  The court held that

15   plaintiff's claims for rescission based on unilateral mistake were preempted by Section 560.2

16   because "they [were] clearly directed at enforcing [d]efendants' responsibility to disclose

17   information about a home loan."  *Id.* at *3; *accord Hernandez v. Downey Savings and Loan Assn.*,

18   2009 WL 704381 (S.D. Cal. Mar. 17, 2009.)  Similarly here, plaintiffs' rescission claim is preempted

19   because it seeks to attack defendants' alleged failure to disclose the true nature of the lending

20   relationship during the processing and origination of the loans.

21   /////

22   /////

23   /////

24   /////

25

26

1  C.    Negligence (Origination)[6]

2         Defendants argue plaintiffs' third claim for negligence in loan origination is also

3  preempted because plaintiffs "seek to impose requirements regarding terms of credit and

4  processing, origination, servicing sale or purchase of, or investment or participation in, mortgages."

5  (MTD at 5:13-14.)  Plaintiffs argue their negligence claim is not barred because they "seek relief

6  for the harm [d]efendants caused by encouraging loan officers and brokers to commit fraud both in

7  misleading statements to [p]laintiffs at origination and by changing items on loan applications to

8  qualify [p]laintiffs for loans they could not afford."  (Opp'n at 8:18-22.)

9         Plaintiffs' claim for negligence is also preempted.  This claim rests on plaintiffs'

10 allegations that they were "operating under the false belief that [they were] entering into a traditional

11 mortgage agreement with a traditional lender," and that defendants led them to believe "the loan[s]

12 were reasonable and affordable based on the appraisal and the use of quality underwriting

13 standards." (FAC ¶¶ 159, 167.)

14        Again, the very label plaintiffs attach to their third claim — "Negligence

15 (origination)" — undermines their position in the face of defendants' motion.  Loan origination is

16 covered by Section 560.2(b)(10).  As with plaintiffs' claim for rescission, plaintiffs' alleged "belief"

17 about the affordability of the loan at the time of execution involves "terms of credit," as well as

18 disclosures, origination and processing of the loan, and thus, is preempted by HOLA.  12 C.F.R. §

19 560.2(b) (9), (10).

20        According to the prevailing case law, plaintiffs' claims are also preempted by   12

21 C.F.R. § 560.2(b) (4).  For example, in *Joseph v. Wachovia Mortg. Corp.*, 2011 WL 5827224 (N.D.

22

23        [6]  Plaintiffs assert that their "causes of action for intentional and negligent
   misrepresentation" are not preempted because they "seek damages for misleading statements
24 regarding the quality underwriting guidelines used to ensure [p]laintiffs could afford their loans,
   and misleading statements about the value of [p]laintiffs' property."  Plaintiffs' argument in this
25 regard is a red herring.  Plaintiffs' first amended complaint omits claims for intentional and
   negligent misrepresentation previously asserted in the original complaint.  (*Compare* NOR *with*
26 FAC.)  Plaintiffs are limited to the bounds set by the amended complaint, which supersedes the
   original.

1 Cal. Nov. 18, 2011), plaintiffs argued defendant negligently "employed underwriting standards

2 which did not account for plaintiffs' ability to pay" and " failed to observe a duty of care by

3 'enticing' Plaintiffs into a mortgage loan they could not afford." *Id.* at *4.  The court held that the

4 claim fell "with[in] the 'terms of credit' provision of § 560.2(b)(4) and [was] preempted for that

5 reason." *Id.*; *accord Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, at *11 (E.D. Cal. Sept. 1,

6 2011), *adopted by* 2011 WL 552608 (Nov. 14, 2011) (finding allegations that defendant "lowered

7 its underwriting standards in order to provide plaintiff with a financially burdensome loan"

8 preempted because they were "entirely based on defendants' disclosures, the provision of credit-

9 related documents, and the processing, origination, or servicing of [the] mortgage, . . ."). Similarly

10 here, because plaintiffs' negligence claim is predicated on allegations of improper underwriting and

11 enticing plaintiffs into unaffordable loans, plaintiffs' claims are also preempted by 12 C.F.R.

12 § 560.2(b) (4).

13         D.     Negligence (Servicing)

14         Defendants argue plaintiffs' "loan modification-based  claim[] [is] preempted by

15 Section 560.2 because it would impose requirements on lending and disclosure practices." (MTD

16 at 7:7-9.)  Plaintiffs counter that the claim is not preempted because it "seeks to hold [d]efendants

17 accountable for the misleading statements made about [p]laintiffs' qualifications for loan

18 modification, . . . inducing [p]laintiffs to default on their loans and subsequently lose their

19 properties." (Opp'n at 8:22-24.)  While plaintiffs concede that California law does not generally

20 impose a duty on lenders, (FAC ¶ 147), they argue defendants assumed a duty in this case when they

21 participated in the "financed enterprise beyond the domain of the usual money lender." (*Id.*)

22         Plaintiffs allege defendants were negligent in the servicing of the loans "[b]y agreeing

23 to work with [p]laintiffs to attempt modification of [their] loans" with a future "promise of

24 permanent modification without giving 'real consideration'" to the loan modification request. (*Id.*

25 ¶¶ 380, 383, 388.)  Plaintiffs also argue defendants negligently serviced the loan by "request[ing]

26 that documents be re-sent numerous times" during the modification process. (*Id.* ¶ 309.)  Finally,

1  plaintiffs allege defendants falsely represented "that to be considered for a loan modification they
2  would need to cease making payments on their mortgage."  (*Id.* ¶ 307.)

3      Plaintiffs' allegations that defendants did not give "real consideration" to
4  modification and requested that documents be resent are preempted in that they expressly attack the
5  servicing of the loan.  12 C.F.R. ¶ 560.2(10).  However, as in the case of *Esoimeme*, "because
6  plaintiffs' allegations regarding defendants' misrepresentations related to the alleged loan
7  modification may arise from a 'general duty not to misrepresent material facts,' rather than from a
8  'state law purporting to address the subject of the operations of a federal savings association,'
9  plaintiffs' [negligence] claim that is based on those allegations may not be preempted by HOLA."
10 *Esoimeme*, 2011 WL 3875881, at *12 (quoting *Silvas*, 514 F.3d at 1004–06); *see also DeLeon*, 2011
11 WL 311376, at *10-11 (where plaintiff alleged defendant "falsely represented" a loan modification
12 would be given and that foreclosure would not occur during the modification process, plaintiffs'
13 fraud and unfair competition claims were not preempted.); *Sato v. Wachovia Mortg., FSB*, 2011 WL
14 2784567, at *9 (N.D. Cal. July 13, 2011) (plaintiff's specific allegations that defendant
15 "misrepresented to [plaintiff] that she had to default on her mortgage payments in order to qualify
16 for a loan modification" were not preempted by HOLA).  Construing the complaint in the manner
17 most favorable to plaintiffs, as required, the court finds plaintiffs' negligence claim is not preempted
18 "to the extent it relies on general allegations of misrepresentation." *Id.* at *8.

19     The question remains then whether plaintiffs have pled a cognizable claim under
20 Federal Rule of Civil Procedure 12(b)(6).  While plaintiffs are technically asserting a state-law cause
21 of action for "negligence" based on the alleged misrepresentation that plaintiffs must default on their
22 loans in order to receive modification, plaintiffs are functionally asserting a claim for
23 misrepresentation.[7]  The court therefore  analyzes "the underlying conduct which forms the basis

24

---

25      [7] The court can only surmise that plaintiff omitted its claim for misrepresentation and
   substituted claims for negligence based on the same underlying facts for purposes of avoiding
26 Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.

of plaintiffs' state law claims and not the label of the claims themselves to determine" whether plaintiffs have stated a claim upon which relief can be granted. *Clancy v. Bay Area Bank*, 1997 WL 182291 at *2 (N.D. Cal. April 7, 1997) (citing *Scott v. Gulf Oil,* 754 F.2d 1499, 1504 (9th Cir. 1985)). Here, as set forth above, the factual predicate for plaintiffs' fourth claim is that defendants made material misrepresentations regarding modification of plaintiffs' loans. The court therefore must analyze plaintiffs' fourth claim for relief as though it were a claim for misrepresentation.

Under California law, the elements of misrepresentation are: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 243 (2007). Although state law controls the substantive elements of plaintiffs' claim for misrepresentation, plaintiff "must still meet the federal standard to plead [misrepresentation] with particularity." *Sato*, 2011 WL 2784567, at *9 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)); *see also Meridian Project Systems, Inc. v. Hardin Const. Co., LLC,* 404 F.Supp.2d 1214, 1219 (E.D. Cal. 2005) (*"*It is well-settled in the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement."); *F.T.C. v. Lights of America, Inc.*, 760 F.Supp.2d 848, 853 (C.D. Cal. 2010) ("It is well-established in the Ninth Circuit that claims for negligent misrepresentation must meet Rule 9(b)'s particularity requirements.") (internal quotations omitted).

While plaintiffs' general allegations, that unnamed persons in defendants' employ advised plaintiffs they had to default for purposes of modification, save their claim from preemption, such general allegations are insufficient to state a plausible claim for relief. Plaintiffs' "vague and conclusory allegations . . . lack the 'who, what, when, where, and how' required by [Federal Rule of Civil Procedure] 9(b)." *Id.* at *8 (citing *Kearns*, 567 F.3d at 1125) (dismissing plaintiff's claims for intentional and negligent misrepresentation predicated on allegations that defendant "misrepresented to [plaintiff] that she had to default on her mortgage payments in order to qualify

1    for a loan modification"). Plaintiffs' fourth claim is dismissed with leave to amend, if plaintiffs are

2    able to amend while complying with Federal Rule of Civil Procedure 11.

3              E.    Wrongful Foreclosure

4              Defendants maintain plaintiffs' fifth claim for wrongful foreclosure is "preempted

5    because they seek to impose state law requirements regarding the 'sale or purchase of . . .

6    mortgages.'" (MTD at 7:23-24.) Plaintiffs counter that the claim is not barred because "[t]he

7    wrongful foreclosure claim [also] arises from the lack of contract formation." (Opp'n at 10:22-24.)

8              For the same reasons plaintiffs' claim for rescission is preempted, plaintiffs' claim

9    for wrongful foreclosure also is preempted by HOLA. Plaintiffs' assertion that the claim is not

10   preempted for "lack of contract formation" is unavailing. Rather, the claim is preempted because

11   it is squarely directed at the "sale or purchase . . . of mortgages." 12 C.F.R. § 560.2(b)(10).

12             In *Stefan v. Wachovia*, 2009 WL 4730904 (N.D. Cal. Dec. 7, 2009), the plaintiff

13   "challeng[ed] [d]efendant's foreclosure of his property." *Id.* at *1. The court found that "all of

14   plaintiff's state law claims f[ell] within the purview of Section 560.2(b), as they attack[ed]

15   [d]efendant's initiation of the state foreclosure process," and thus, were preempted. *Id.* at *3. The

16   court explained that plaintiff's "claims of misconduct surrounding the foreclosure proceeding clearly

17   [fell] under the preemption provisions for 'processing, origination, sale or purchase of . . .

18   mortgages' and 'disclosure.'" *Id.* (citing *Biggins v. Wells Fargo & Co.*, 2009 WL 2246199, at *14

19   (N.D. Cal. 2009); *accord Winding v. Cal-Western Reconveyance Corp.*, 2011 WL 221321, at *12

20   (E.D. Cal. Jan. 24, 2011). Similarly here, plaintiffs' claim for wrongful foreclosure is preempted.

21   IV.    CONCLUSION

22             For the reasons stated above, defendants' motion to dismiss plaintiffs' first amended

23   complaint is granted as follows:

24             •     Defendants' motion to dismiss plaintiffs' first claim for "privity of contract"

25                   is granted without leave to amend.

26   /////

1    •     Defendants' motion to dismiss plaintiffs' second claim for "Rescission —
2        Mistake — void agreement" is granted without leave to amend.

3    •     Defendants' motion to dismiss plaintiffs' third claim for "Negligence
4        (Origination)" is granted without leave to amend.

5    •     Defendants' motion to dismiss plaintiffs' fourth claim for "Negligence
6        (Servicing)" is granted with leave to amend.

7    •     Defendants' motion to dismiss plaintiffs' fifth claim for "Wrongful
8        Foreclosure" is granted without leave to amend.

9    IT IS SO ORDERED.

10   DATED:  January 7, 2013.

11

12   _____
     UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

14